IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTONIO D.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 21 C 4104 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Supplemental Security Income under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381a, 1382c of the Social Security Act, three and a half years ago in October 2018. (Administrative Record (R.) 173-78). He claimed that he became disabled as of December 1, 2013, due to a learning disability, attention deficit disorder, epilepsy, dizzy spells, migraines, and joint and back pain. (R. 173, 216). Over the next two and a half years, the plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. Plaintiff filed suit under 42 U.S.C. § 405(g) on August 2, 2021, and the parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on August 6, 2021. [Dkt. #8]. It is the ALJ's decision that is before the court for review. *See* 20 C.F.R. §§404.955; 404.981. Plaintiff asks the court to remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

I.

A.

Plaintiff was born on October 14, 1994, making him just 19 years old when he claims he became unable to work. (R. 173). In fact, he has never worked. (R. 216, 217). At one point he claimed to have dropped out of high school in the 11th grade. (R. 217). At his hearing, however, he claimed to have graduated. (R. 46-47). He said he had smaller classes in school and extra help from teachers. (R. 46).

The medical record in this case is not large as these cases go; about 1000 pages, but much of that is duplication. (R. 275-1279). A smaller medical record is to be expected from one so young as the plaintiff, but perhaps not when that young person is an applicant for supplemental security income. It is, of course, the plaintiff's burden to prove he is disabled with medical evidence. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011)("The claimant bears the burden of submitting medical evidence establishing her impairments and her residual functional capacity."); *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008) (noting that the claimant bears the burden of producing medical evidence sufficient to support a claim of disability). Plaintiff was hospitalized for a seizure during the years the medical record covers, but, other than that, in the main, examination results – gait, range of motion, grip, strength, reflexes, sensation, attention, concentration, etc. – are essentially normal.

On February 9, 2013, plaintiff had a physical exam with Dr. Albert Osei, in connection with a previous application for benefits. The results were normal. (R. 283-85): range of motion throughout the spine was normal; range of motion in extremities was normal, and strength was 5/5 throughout; grip strength was also 5/5; gait was normal and non-antalgic; sensation and reflexes

were normal. (R. 284).

On February 24, 2015, plaintiff had an EEG with normal results. (R. 796-97). Physical examination at that time was essentially normal. Range of motion throughout the spine was normal. Strength was normal. Gait was normal. (R. 804-05). Mental status was normal; attention, concentration, and knowledge were all normal. (R. 805). Plaintiff's mother reported him having a 20-second seizure in his sleep on March 20, 2015. (R. 816). Physical examination on April 6, 2015, was normal. Psychiatric exam was normal. Attention was intact. (R. 822). Motor strength was normal throughout. (R. 823). Etiology of seizures was undetermined; there was no true electrographic evidence of seizures. Suspicion was psychogenic seizures. (R. 825).

On June 13, 2018, Anna Sagan, M.D., prescribed a walker with wheels due to ataxia. (R.1241). Eight months later, on February 9, 2019, Dr. Zaia Lachin examined plaintiff in connection with his application for benefits. (R.306-09). Physical examination was normal with just a couple of exceptions. Dr. Lachin observed some tremors of the hands and some body shaking every now and then. (R.308). Plaintiff had some difficulty squatting and standing on one foot due to balance issues. (R. 308). Gait was normal, range of motion was normal throughout, and strength, sensation, and reflexes were all normal. (R.308). Mental status examination was also normal. (R. 308).

Plaintiff had a psychological examination in connection with his application on March 2, 2019, with Phyllis Tolley, Psy.D. (R. 311-12). Plaintiff stated that he graduated from high school and had special education classes. (R. 311). He also indicated that he had worked briefly transporting patients in a hospital. (R. 311). Dr. Tolley noted plaintiff had no tremors or psychomotor abnormality. (R.312). Plaintiff's immediate recall for digits was poor, but intact for words. Delayed recall was poor. His fund of information was intact. He was unable to perform

3

serial sevens. His abstract thinking was poor and he could not explain the meaning of proverbs. His judgment and insight were intact. (R. 312). Dr. Tolley diagnosed learning disability and indicated that plaintiff was a somewhat unreliable informant. (R.312).

On March 12, 2019, Dr. Vidya Madala, M.D. reviewed the record for the state disability agency and concluded that plaintiff had no exertional limitations, but he was restricted to occasional climbing of ladders/ropes/scaffolds, frequent visual acuity, and non-concentrated exposure to hazards. (R.70-71). On March 12, 2019, Jeanne Yakin, Ph.D. reviewed the record and said that plaintiff was "capable of performing 1-2 step tasks and can concentrate sufficiently to complete these kinds of tasks." (R.73).

On March 4, 2019, plaintiff began seeing Dr. Dwayne Buchanan and had an annual physical. (R.1262). Ambulation was good, and plaintiff said he had no balance problems. (R. 1263). Physical exam was normal including range of motion throughout, sensation, reflexes, and coordination. (R. 1265). Mood, attention span, and concentration were normal. (R. 1265). Dr. Buchanan noted seizures were controlled with medication. (R. 1266).

On June 14, 2019, plaintiff was taken to the emergency room after two seizures. (R. 321). Plaintiff was intubated and seizure activity continued upon admission. (R. 323, 328). MRI revealed no evidence of acute intracranial process. (R. 321, 342). Plaintiff was medicated and seizure activity subsided after four hours. (R. 328-29). He was admitted to ICU for monitoring. (R.345). He remained seizure-free and was discharged on June 21, 2019. (R.362).

Plaintiff saw Dr. Buchanan on July 1, 2019, while recovering from his hospitalization. He complained of blurred vision and joint pain and weakness. (R. 1256). There was tenderness over the dorsum surface. Sensation and reflexes were normal. Plaintiff was in a wheelchair. Mood,

4

attention span, and concentration were normal. (R. 1257).

On July 9, 2019, plaintiff followed up with Dr. Sandra Rose, who noted plaintiff had overall improvement of his seizure disorder until the previous episode June 14th. Recurrence seemed to have been triggered by a death in the family and increased stress and poor sleep. (R.426). Plaintiff reported he was more tired, confused, and was having increased difficulty functioning since the episode. (R.426). There were no problems with gait, dizziness, weakness, or numbness. (R. 427, 429). Mental status was normal. (R. 428).

On August 26, 2019, physical exam was again normal. (R. 454-56). Plaintiff underwent five days of epilepsy monitoring. (R. 457-60). There were two episodes of non-epilectic seizure-like activity but no electrographic correlation. (R. 458, 465). Dr. Rose restarted Lamictal and Trileptal. (R. 465). Plaintiff's medications were refilled and he had a brief followup in September 2019. (R. 761-76, 1154-69).

On December 24, 2019, Steven Fritz, Psy.D. reviewed the record for the state disability agency and concurred with Dr. Yakin's March 2019 opinion. (R.90). Dr. Lenore Gonzalez reviewed the record on January13, 2020, and opined that plaintiff had no exertional limitations, but was restricted to occasional climbing of ramps/stairs, no climbing of ladders/ropes/scaffolds, and no concentrated exposure to hazards, noise, and vibration. (R.86-88). She also said that plaintiff had "limited" far acuity. (R.87).

On February 21, 2020, plaintiff returned to see Dr. Buchanan, and reported that he had no problems, was taking his medications, and experiencing no side effects. (R. 1247). He did get off balance in the shower. (R. 1247). Physical exam was normal. (R. 1249). It was noted plaintiff was unable to work due to medical conditions. (R. 125). On March 24, 2020, plaintiff's mother reported

5

to Dr. Rose that plaintiff had been fine although napping a lot. (R. 1173).

On April 23, 2020, Dr. Buchanan filled out a medical opinion form from plaintiff's attorney. (R.1180-82). Due to muscle weakness, he thought that plaintiff could sit for one hour, stand for one hour, needed to change position frequently, and could only occasionally lift/carry up to ten pounds. (R.1180). Plaintiff would need to lie down and apply heat occasionally. (R. 1181). But, the doctor said, plaintiff would never miss work due to exacerbations of pain. (R.1182). Dr. Buchanan said that, due to motion sickness, plaintiff was significantly limited in his ability to work or care for himself. (R. 1182).

Dr. Buchanan had a fifteen-minute tele-appointment with plaintiff on June 23, 2020. Plaintiff reported no issues. (R. 1244-46). Dr. Buchanan encouraged plaintiff to exercise. (R. 1244).

On September 17, 2020, Dr. Buchanan filled out another questionnaire from plaintiff's attorney. (R.1184-87). Dr. Buchanan said that plaintiff's seizures were epilectic and lasted 30 seconds to one minute. He said plaintiff had one to two per week but, confusingly, also one per month. (R. 1184). The doctor said plaintiff was unable to ambulate safely and was unable to do any activity that required concentration. (R. 1185). The only clinical finding Dr. Buchanan noted was "ataxic gait." (R. 1185). He opined that plaintiff was incapable of even low stress jobs and had symptoms that would frequently interfere with attention/concentration needed to simple tasks. (R.1186).

## B.

After a telephonic administrative hearing during which plaintiff, represented by counsel, testified, along with a vocational expert, the ALJ determined the plaintiff had the following severe

impairments: "epilepsy; depression and learning disorder." (R. 16). The ALJ then found plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, mentioning listings 11.02 (epilepsy), 12.04 (depression), 12.11 (neurodevelopmental disorders). (R. 16-17). The ALJ determined that the plaintiff had a moderate limitation in understanding, remembering, or applying information; a mild limitation interacting with others; a moderate limitation concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. (R. 17).

The ALJ then determined that plaintiff could perform light work with the following additional limitations:

> [plaintiff] can occasionally climb ramps and stairs but never ladders, ropes or scaffolds; and occasionally balance, stoop, kneel, crouch and crawl; frequently reach in all directions including overhead with both upper extremities; frequently handle; finger and feel with both upper extremities. He can tolerate occasional exposure to and occasionally work around noise consistent with a light industrial work environment, vibration, and hazards such as moving machinery or unprotected heights. He can perform work that involves simple routine tasks requiring no more than short simple instructions and simple work related decision making with few work place changes.

(R. 17). In addition, the ALJ then summarized the plaintiff's allegations and determined that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 18). The ALJ then discussed the medical record, noting that plaintiff's seizures have been controlled for much of his life, including for a year following his application for benefits. (R. 18). The ALJ then discussed the medical

record from June 2019, when plaintiff had a seizure episode, through his treatment and followups in 2019 and 2020. (R. 18-19). The ALJ noted the prescription for a walker in 2018, but pointed out that physical exams, including gait, were, in the main, normal thereafter. (R. 19). The ALJ explained that the limitation to simple routine tasks requiring no more than short simple instructions and simple work related decision making with few work place changes accommodated plaintiff's learning disabilty. (R. 20).

As for medical opinions, the ALJ said the state agency opinions were somewhat persuasive given the time they were completed, but additional limitations were included to give plaintiff the benefit of the doubt. The ALJ found the first checklist prepared by Dr. Buchanan unsupported by the record, which included normal exam results with regard to gait and coordination. The ALJ found Dr. Buchanan's second checklist unsupported as well. The doctor said seizure frequency was once or twice a week, but there was no medical evidence to support that assessment. (R. 20).

Next, the ALJ, relying on the testimony of the vocational expert, found that plaintiff could perform jobs that existed in significant numbers in the national economy, such as: marker (DOT #209.587-034; 150,000 jobs); router (DOT #222.587-038; 90,000 jobs); and label coder (920.587-014; 70,000 jobs). (R. 21). Accordingly, the ALJ found plaintiff not disabled and not entitled to benefits under the Act. (R. 22).

## II.

If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). The substantial evidence standard is not a high hurdle to negotiate. *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019); *Albert v. Kijakazi*, 34 F.4th 611, 614

(7th Cir. 2022). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). To determine whether substantial evidence exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving debatable evidentiary conflicts, or determining credibility. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Where reasonable minds could differ on the weight of evidence, the court defers to the ALJ. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020).

But, in the Seventh Circuit, the ALJ also has an obligation to build what is called an accurate and "logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Jarnutowski v. Kijakazi*, _F.4th_ (7th Cir. 2022), 2022 WL 4126293; *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). The Seventh Circuit has explained that, even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build a "logical bridge." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). *But see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were correct on both counts, we may affirm on any basis

9

appearing in the record,...."); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate the burden of proof on the causation element between the parties,...No matter, because we may affirm on any basis that appears in the record.").

Of course, this is a subjective standard, and a certain lack of predictability comes with it for ALJs hoping to write opinions that stand up to judicial review. One reviewer might see an expanse of deep water that can only be traversed by an engineering marvel like the Mackinac Bridge. Another might see a trickle of a creek he can hop across on a rock or two. In any event, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). In the end, it is sufficient for ALJs to "minimally articulate" their reasoning. *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).[2]

---

[2] Prior to *Sarchet*'s "logical bridge" language, the court generally employed the phrase "minimal articulation" in describing an ALJ's responsibility to address evidence. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985)(collecting cases). The court's focus was on whether an ALJ's opinion assured the reviewing court that the ALJ had considered all significant evidence of disability. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), for example, the court "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted," but only "a minimal level of articulation of the ALJ's assessment of the evidence...in cases in which considerable evidence is presented to counter the agency's position." 732 F.2d at 79.

In *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985), the court rejected a plaintiff's argument that an ALJ failed to adequately discuss his complaints of pain and was more explicit about how far ALJs had
(continued...)

The ALJ has done enough here.

## III.

Plaintiff advances two arguments for overturning the ALJ's decision denying him benefits. First, plaintiff contends that the ALJ failed to adequately consider the medical opinions from the state agency psychologists who reviewed the medical evidence. Second, the plaintiff asserts that because the ALJ did not fully accept any one medical opinion, her residual functional capacity finding is unsupported by substantial evidence. Any other arguments the plaintiff might have raised are, of course, deemed waived. *Jeske v. Saul*, 955 F.3d 583, 597 (7th Cir. 2020); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

---

²(...continued)
to go to explain their conclusions:

> We do not have the fetish about findings that [the plaintff] attributes to us. The court review judgments, not opinions. The statute requires us to review the quality of the evidence, which must be "substantial," not the quality of the ALJ's literary skills. The ALJs work under great burdens. Their supervisors urge them to work quickly. When they slow down to write better opinions, that holds up the queue and prevents deserving people from receiving benefits. When they process cases quickly, they necessarily take less time on opinions. When a court remands a case with an order to write a better opinion, it clogs the queue in two ways—first because the new hearing on remand takes time, second because it sends the signal that ALJs should write more in each case (and thus hear fewer cases).
>
> The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do....This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

Much more recently, the Seventh Circuit explained that "the 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021).

**A.**

Plaintiff first argues that the ALJ failed to explain her consideration of the mental health opinions from state agency reviewing psychologists Yakin and Fritz. As already noted, Dr. Yakin reviewed the medical record as of March 12, 2019 and concluded that plaintiff had no limitation in following short and simple instructions, and a moderate limitation in following detailed instructions. As a result, Dr. Yakin felt plaintiff was "capable of performing 1-2 step tasks and can concentrate sufficiently to complete these kinds of tasks." (R.73). Dr. Fritz reviewed the record as of December 24, 2019 and agreed with Dr. Yakin. (R. 89-90).

The ALJ did not become mired in detail in assessing those opinions. Nor did she have to. Under the applicable regulations, an ALJ is supposed to explain how she considered the supportability of an opinion and the opinion's consistency with the record in determining how persuasive a medical opinion is. 20 C.F.R. § 416.920c(b)(2). Here, the ALJ said that the state agency opinions were somewhat persuasive, given the time they were prepared. (R. 20). We can take that to mean they were somewhat consistent with the record at the time. The ALJ then added visual limitations and a restriction to light work. And she gave the plaintiff "additional limitations based on his allegations, giving him the benefit of the doubt." (R. 20). There wasn't any mention of supportability. But, as it happens, any error the ALJ made in failing to flesh out how persuasive she thought the state agency reviewers' opinions were was harmless. *See, e.g., Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013)(". . . the ALJ's silence about why he gave controlling weight to one assessment over another . . . is subject to harmless-error review, and we will not remand a case to the ALJ for further explanation if we can predict with great confidence that the result on remand would be the same."); *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011)(harmless error where

ALJ failed to mention state agency reviewers' opinions and record was such that remand would not achieve a different result). A remand for the ALJ to provide the details of how she considered the opinions would not, given the record, change the result here.

The plaintiff argues that the supposedly short shrift the ALJ gave the psychological opinions is a problem because while the psychologists said plaintiff was capable of performing 1-2 step tasks, the ALJ translated that into a capacity for "work that involves simple routine tasks requiring no more than short simple instructions and simple work related decision making with few work place changes." (R. 17). When fashioning a residual functional capacity finding from a state reviewer's opinion, an ALJ must consider whether the reviewers' narrative RFC assessments adequately reflect their limitations checklists. *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021); *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). Here, the reviewers found no limitations following short and simple instructions and a moderate limitation in following detailed instructions. That translates to a "fair" ability to follow detailed instructions, *Pavlicek*, 994 F.3d at 783, which certainly doesn't rule out an ability to perform more than one- to two-step tasks. Nevertheless, the ALJ kept the plaintiff limited to simple tasks requiring an ability to follow simple instructions. That is certainly within the bounds of what the reviewers thought plaintiff could do; after all, they both felt plaintiff had no limitation in following short and simple instructions.

But the plaintiff has an issue with the ALJ's omission of a specific 1-2 step tasks limitation. He argues that the job examples the ALJ accepted from the vocational expert – all have GED reasoning levels of 2, which requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." Plaintiff argues that this is more demanding than

13

performing simple tasks with simple instructions. But that's not necessarily so. The Seventh Circuit has found that there is no inherent conflict between a limitation to 1 to 2 step tasks and reasoning level 2. *See, e.g., Surprise v. Saul*, 968 F.3d 658, 662–63 (7th Cir. 2020)(one- to three-step instructions limitation is not necessarily incompatible with reasoning level 2); *Sawyer v. Colvin*, 512 F. App'x 603, 610–11 (7th Cir. 2013)(no apparent conflict between a simple tasks limitations and level 3 reasoning—a more demanding standard than level 2). Moreover, at least one of the job examples provided in the state agency reviewers' opinions – Reeler 640.685-054 – has a GED level of 2, https://occupationalinfo.org/64/640685054.html, indicating that jobs at this level are not beyond what the reviewers considered to be one- to two-step tasks. (R. 74, 91). Accordingly, "substantial evidence" supports the ALJ's translation of the medical opinions into her residual functional capacity finding.

**B.**

Plaintiff also complains that the ALJ failed to adequately develop the record with additional medical opinion evidence, which left her decision unsupported by "substantial evidence." The plaintiff argues that because the ALJ rejected the opinion from plaintiff's treating physician, Dr. Buchanan, that plaintiff was disabled, and found the opinions from state agency reviewers not restrictive enough, the ALJ's finding that plaintiff can do light work – something of a middle ground between those opinions – has no support in the record. Essentially, plaintiff's position seems to be that the ALJ had to further develop the record and obtain a medical opinion that she could rely on fully. [Dkt. #17, at 8-9].

First of all, plaintiff has been represented by counsel since July or 2019, nearly a year before plaintiff's administrative hearing and about the time plaintiff filed his request for reconsideration

14

of the initial denial of his application. (R. 99-103). As such, the court can assume, consistent with common sense and the way in which lawyers routinely function, that the plaintiff has made "his strongest case for benefits." *Schloesser v. Berryhill*, 870 F.3d 712, 721 (7th Cir. 2017). "The degree of the ALJ's responsibility to take the initiative is influenced, if not entirely dictated, by the presence or absence of counsel for the claimant." *Nicholson v. Astrue*, 341 F. App'x 248, 254 (7th Cir. 2009). It is not the court's job to become a partisan for either side or to do the work of counsel. Quite the contrary. *See, e.g., Kreg Therapeutics, Inc. v. Vital Go, Inc.* 919 F.3d 405, 415 (7th Cir. 2019); *United States v. Lanzotti,* 199 F.3d 954, 960 (7th Cir. 1999). As already discussed, the medical evidence, in the main, consists of normal exam findings, including musculoskeletal and neurological exams. An additional medical opinion would not change that. *See Nicholson*, 341 F. App'x at 254 ( "We do not doubt that an additional medical opinion at the time of the hearing would have been helpful (one way or the other), but the question before us is whether the ALJ's decision to rest on the record that he had was an abuse of discretion. We think not.").

While there are two medical opinions in the record that suggest plaintiff had greater limitations than the ALJ found, the ALJ properly considered them and gave valid reasons for rejecting them. The prescription for a walker in June of 2018 is, as the ALJ explained, a complete outlier. (R. 19). Examinations before and after that prescription consistently show normal gait, range of motion, and strength. (R. 284, 308, 804-05, 822-23, 1263, 1265). As such, the ALJ was allowed to disregard the note as inconsistent with the record. *Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022); *Karr*, 989 F.3d at 512.

The ALJ's treatment of Dr. Buchanan's checklist opinions indicating plaintiff was unable to work was similarly well-grounded. The ALJ found Dr. Buchanan's opinion was inconsistent with

15

the overall record and unsupported by his own findings. (R. 20). Those are both valid reasons for rejecting a medical opinion. *Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020); *Burmester v. Berryhill*, 920 F.3d 507, 512 (7th Cir. 2019). With the exception of one visit that immediately followed plaintiff's only hospitalization for a seizure, Dr. Buchanan's exam notes – both before and after his checklist opinions – are unremarkable and exam findings are essentially normal. (R. 1244-46, 1247-49, 1262-66). Dr. Buchanan's statement that plaintiff has two or three seizures a week (or one per month) has no support at all in the medical record.

Just because the ALJ didn't accept the limitations from plaintiff's doctor and found greater limitations than did the reviewing doctors, does not mean the ALJ was required to obtain another medical opinion. *See Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022)(question as to whether a medical opinion was need is whether the ALJ reasonably believed the evidence supported his or her finding); *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014)("We do not see any reason to impose such a requirement in this case, particularly considering that the determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide."). "[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007); *see also Vang v. Saul*, 805 F. App'x 398, 402 (7th Cir. 2020)(ALJ fashioned an appropriate RCFC despite rejecting plaintiff's treating physician's opinion and not otherwise relying on the opinions of the state agency consultants); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995)("That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.").

The ALJ had a record before her that consisted of one episode in which the plaintiff had a seizure and required hospitalization and monitoring. The rest of the record, in the main, consisted of normal exam findings. Plaintiff's gait, strength, reflexes, sensation, etc., were consistently normal. That certainly amounts to "substantial evidence" to support the ALJ's finding that plaintiff could do light work; and, even more certainly, fails to carry plaintiff's burden of proving with medical evidence that he is disabled. *Karr*, 989 F.3d at 513; *Punzio*, 630 F.3d at 712; *Eichstadt*, 534 F.3d at 668.

In the end, the record in this case, and the ALJ's decision, calls to mind the recent Seventh Circuit opinion about another young applicant with a seizure disorder, who had never worked. As the Court said there: "[t]he ALJ's determination effectively requires [plaintiff] to try to get a job and give work a shot. If working proves beyond [plaintiff's] capacity, []he can apply again for Social Security benefits.*" Albert v. Kijakazi*, 34 F.4th 611, 617 (7th Cir. 2022).

## CONCLUSION

For the foregoing reasons, the ALJ's opinion denying plaintiff's application for Supplemental Security Income is affirmed.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 9/13/22